UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACOB ROUSE,

                Petitioner,

    -vs-

THE ATTORNEY GENERAL OF THE
STATE OF NEW YORK


               Respondent.

_____

**DECISION AND ORDER**

**No. 12-CV-00293(MAT)**

## I.  Introduction

*Pro se* Petitioner Jacob Rouse ("Petitioner" or "Rouse") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered September 25, 2006, in New York State, Monroe County Court, convicting him, upon a jury verdict, of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25[3] (felony murder)).

For the reasons that follow, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

### A.  Introduction

On March 9, 2006, Petitioner, Antwon Owens ("Owens"), Brandon West ("West"), and Lucious Peters ("Peters") set out to commit a robbery in Rochester, New York.  Petitioner picked up the three men

in his vehicle and drove them around looking for potential robbery targets. The men were armed with a shotgun, a .22 caliber pistol, and a pellet gun. Shortly before 11:00 p.m., Petitioner parked his car on Magnolia Street. Petitioner remained in the car while the other three men left the vehicle. Owens carried the shotgun, West carried the .22 caliber gun, and Petitioner gave Peters his pellet gun. The three men walked up to a car that was backing out of a nearby driveway. The three men surrounded the vehicle, which had stopped when the driver, Hershel Scriven ("Scriven" or "the victim"), realized people were behind the car. Scriven, realizing that the men were armed, reversed his vehicle and, as he did so, West fired shots at the car and Owen fired one shot through the driver's side window that hit and killed Scriven. The men then ran back to Petitioner's parked car and Petitioner drove them away from the scene.

In April 2006, a Monroe County grand jury charged Owens with first-degree murder, and Petitioner and Peters with second-degree (felony) murder.[1] Trial Trans. [T.T.] 313-314. The indictment charged Rouse as an accomplice to the events of March 9, 2006, pursuant to Penal Law § 20.00. T.T. 314-315.

---

[1] According to Respondent's Memo of Law, West was not included in the indictment as there was some question as to whether he would be treated as a youthful offender. West eventually pled guilty to criminal possession of a weapon and menacing. People v. West, 70 A.D.3d 1508 (4th Dep't 2010); see Resp't Mem of Law at p 4, n. 2.

Petitioner and his co-defendants were tried separately.[2]  On September 18, 2006, Petitioner proceeded to trial before the Hon. Frank P. Geraci, Jr. and a jury.

**B.    The Trial**

**1.    The People's Case**

On March 9, 2006, Melinda Nelson ("Nelson"), Jerry Lattimore Humphrey ("Humphrey"), Ashley Snead, and Scriven, all of whom were members of the Disciples of Christ Community Choir, went to see a play together.  Trial Trans. [T.T.] 350-351, 414, 441, 471-473. Ashley Snead's son, Miracle Snead, was also with the group. T.T. 441.  After the play, Scriven drove Nelson's car to Ashley Snead's house on Magnolia Street for purposes of dropping off Miracle Snead and to pick up Ashley Snead's sister, Nicole Snead. The group planned to go to Applebee's Restaurant.  T.T. 352, 414-415, 441, 473.

As Scriven pulled the car out of the driveway, Nicole Snead told Scriven to stop the car because there were three people walking behind the car.  Scriven braked and stopped the car without hitting the individuals behind the car.  T.T. 357, 418-420, 443-444, 474-475.  A person wearing a mask approached the driver's side

---

2

Owens was convicted of first-degree murder and sentenced to life imprisonment without the possibility of parole.  The Appellate Division reduced his sentence, in the interest of justice, to twenty-five years to life imprisonment.  People v. Owens, 78 A.D.3d 1509 (4th Dep't 2010).  Peters was convicted of second-degree murder.  People v. Peters, 90 A.D.3d 1507 (4th Dep't 2011).  See Resp't Memo. of Law at n. 1.

window and stood in front of the car pointing a gun at Scriven. T.T. 359, 423, 444, 476. A second man stood by the passenger side of the car. T.T. 424. Nelson, who was in the front passenger seat, in a panic, screamed, "get us out of here" and Scriven put the car in reverse. T.T. 360, 424-425, 448, 479. As Scriven tried to drive away, shots were fired. T.T. 426-427. Scriven, struck by a bullet, slumped over the steering wheel as blood dripped from a hole in his head. T.T. 481. The car crashed into the porch of a house across the street from Ashley Snead's house. T.T. 361-363, 449-450, 481. Nelson got out of the car and ran. Humphrey called 911 and the three remaining occupants stayed crouched in the car until police arrived. T.T. 450-451, 481.

Arthur Tariq Robinson ("Robinson"), Ashley Snead's neighbor, heard gunshots shortly before 11:00 p.m. on the night of the incident. T.T. 459-460. Robinson testified that "[t]he first two, three [gunshots], maybe, were real small . . . and the last one was real loud and distinctive." T.T. 460. When he heard the gunshots, Robinson ran to his front window and saw three men running past his house towards a Ford Taurus that was parked down the street with its lights off. T.T. 461. All three of the men were black males, two were "really dark" and "one [was] really light." T.T. 461. One man was very tall and the other two were shorter. T.T. 461, 463. The taller man appeared to be putting a handgun in his coat

pocket.  T.T. 462.  The three men got into the parked Ford Taurus, and the car drove away with its lights off.  T.T. 464.

At approximately 10:54 p.m., Sergeant David Gebhardt of the Rochester Police Department ("RPD") responded to the 911 call and was flagged down by a man on Magnolia Street who directed him to Nelson's car.  T.T. 327-329.  Sergeant Gebhardt found Scriven in the driver's seat of the car.  Scriven had ben shot in the head and was breathing sporadically, but did not appear to be conscious. T.T. 329.

Kenneth Welling ("Welling"), a technician with the RPD, photographed the crime scene and noted that the car had three bullet holes in the windshield and one bullet hole in the passenger side window.  T.T. 395.  Welling also collected a bullet fragment from inside the car.  T.T. 403.

On March 15, 2006, Dr. Caroline Dignan performed Scriven's autopsy.  T.T. 701-702.  She removed several bullet fragments from Scriven's head and brain.  T.T. 704.  She noted that there were massive injuries to the brain, and opined that Scriven's death was caused by a gunshot wound to his head.  T.T. 706-707.

On April 3, 2006, at approximately 1:45 p.m., Investigator Thomas Cassidy and Police Officer Angel Vasquez of the RPD took Petitioner into custody outside of a drugstore.  T.T. 494, 497, 507.  As Petitioner exited the blue Ford Taurus he was driving, Investigator Cassidy and Officer Vasquez drew their guns and told

Petitioner to put his hands up.  Petitioner complied, and stated, "I have a BB gun in the car."  T.T. 497.  Investigator Cassidy looked in the car, saw the BB gun, and had the car towed to the police station without removing the gun.  T.T. 499.  Officer Vasquez brought Petitioner to the police station and placed him in an interview room.  T.T. 508-509.

At approximately 2:35 p.m., Investigators David Salvatore and William Lawler of the RPD interviewed Petitioner.  T.T. 517, 521-522.  First, they asked Petitioner pedigree and background information, and then advised him of his Miranda rights.  T.T. 523-524.  Investigator Salvatore asked Petitioner if he owned a car and Petitioner replied that he owned a blue Ford Taurus.  T.T. 528.  He then asked Petitioner if he was aware of the shooting on Magnolia Street where a man was killed.  Petitioner responded that he had heard about it from the news.  T.T. 528.  When Investigator Salvatore responded that he did not believe that Petitioner was being completely honest, Petitioner replied that he was a good kid and that he was in the Army Reserves and wanted to go to Iraq.  Petitioner added that he did not hang around bad people.  The investigators then left Petitioner in the interview room.  T.T. 528.  About forty minutes later, the investigators returned with a wiretap order from an unrelated case and a photo array, which included a photo of West.  T.T. 530-531.  Petitioner stated that he did not recognize anyone.  T.T. 531.  With respect to the

wiretap, the investigators told Petitioner -- although it was not true -- that they had been wiretapping Peters's phone calls and that Peters had implicated Petitioner. Petitioner denied involvement. T.T. 531. The investigators then told Petitioner that Peters had confessed to the crime and implicated Petitioner and that Peters was in the station being interviewed. T.T. 533. Petitioner asked if he could see Peters and the investigators escorted Petitioner past the interview room where Peters was being questioned. Petitioner did not speak to Peters, but was permitted to look in the room. T.T. 534. Petitioner was brought back to the interview room where he stated, "I was there, but I only drove." T.T. 534-535. Petitioner then admitted that he knew West. T.T. 535.

At approximately 5:30 p.m., Petitioner was shown another photo array containing Owens's picture, and Petitioner identified Owens. T.T. 537. Petitioner explained that on the night of the shooting, he picked up West, Owens, and Peters. T.T. 539. The men discussed committing a "juke", which meant a robbery. West had a handgun, Owens had a sawed-off shotgun and Petitioner had a pellet gun. Petitioner stated that he gave the pellet gun to Peters and acknowledged that it was the same gun recovered from his car. T.T. 540. Petitioner explained that he drove the men to Magnolia Street where they looked for someone to rob. The first person that the men followed went inside a house. Petitioner then saw a car

coming out of a driveway, which almost hit his three cohorts.  He heard shots fired and a loud bang.  Petitioner saw West fire his gun, but could not see Owens.  T.T. 541.  The three men then ran back to the car and someone said, "it shouldn't have went down like that."  Thereafter, West stated, "the car almost him me." T.T. 541.  Petitioner then dropped the men off and spent the night with a friend.  T.T. 541.  Petitioner stated that West and Owens were brothers.  T.T. 542.  At no point did Petitioner request an attorney, and he was not threatened or promised anything in exchange for his statement.  T.T. 552.  Petitioner then consented to a search of his vehicle, in which the pellet gun was taken as evidence.  T.T. 543-544.

Investigator Randall Benjamin of the RPD spoke to Petitioner later that evening.  He asked Petitioner if he had spoken to the other men earlier on March 9, 2006 to plan the robbery.  Petitioner stated that he made two phone calls to the men earlier in the evening regarding the robbery.  T.T. 601.  Petitioner also stated that before the shooting, he and the men had followed three other people with the intent to rob them.  Petitioner then signed a three-page written statement about the incident.  T.T. 603-607. During the interview, Petitioner stated that he deserved whatever punishment he received and stated, "whatever you guys want to do with me, you can do with me."  T.T. 607-608.

Eric Freemesser, of the Monroe County Public Safety Laboratory, examined bullet fragments from Nelson's car and determined that they were fired from a .22 caliber handgun. T.T. 718-719. He also examined the fragment received from the medical examiner's office and determined that, based on its weight, it was either from a .357 handgun, .30 caliber rifle, or a 20 gauge shotgun. T.T. 724-725.

### 2.   The Defense's Case

Petitioner did not present any evidence on his behalf.

### 3.   Verdict & Sentence

The jury found Petitioner guilty of second-degree (felony) murder. T.T. 885. He was subsequently sentenced to an indeterminate term of from 22 years to life imprisonment. Sentencing Mins. [S.M.] 34.

### C.   Direct Appeal

In a counseled brief, Petitioner appealed his judgment of conviction in the Appellate Division, Fourth Department on the following grounds: (1) that the trial court erred in excluding statements made by co-defendant Owens which exculpated Petitioner; (2) that the evidence was legally insufficient to support the conviction, and, alternatively, that the verdict was against the weight of the evidence; and (3) that the sentence was harsh and excessive. See Resp't Ex. A.

On June 11, 2010, the Appellate Division unanimously affirmed Petitioner's conviction, and leave to appeal was denied. <u>People v. Rouse</u>, 74 A.D.3d 1817 (4th Dep't 2010) (Resp't Ex. C); <u>lv. denied</u>, 15 N.Y.3d 895 (2010) (Resp't Ex. F).

### D.    The Coram Nobis Application

On January 7, 2012, Petitioner filed a *pro se* motion for a writ of error coram nobis in the Appellate Division, arguing that appellate counsel was ineffective for failing to raise the following issues on direct appeal: (1) that the trial court failed to disqualify a juror who informed the court that she was approached during a recess by an acquaintance who was also a member of the victim's family; (2) that the trial court failed to disqualify a juror who informed the court of a death in his family and that he needed to attend the funeral; (3) that the police conducted surveillance of Petitioner without a warrant resulting in an illegal search and seizure; (4) that Petitioner was denied zealous representation by pre-trial counsel and his right to a speedy trial; and (5) Petitioner was denied his right to appear before the grand jury. <u>See</u> Resp't Ex. G.  The Appellate Division summarily denied Petitioner's motion on March 20, 2012 (Resp't Ex. I), and Petitioner did not seek leave to appeal.

### E.   The Habeas Corpus Petition

This habeas petition followed, wherein Petitioner seeks relief on the following grounds: (1) that the trial court erred in precluding him from presenting the complete written statement that co-defendant Owens gave to the police; (2) that the evidence was legally insufficient to support the conviction, and, alternatively, the verdict was against the weight of the evidence; (3) that his sentence was harsh and excessive; (4) that a member of the jury "harbored [a] pre-exisiting opinion of guilt" towards Petitioner and "therefore should have been disqualified from serving on the jury"; (5) that a juror "should have been disqualified . . . because of personal reasons that [a]ffected his ability to be fair and unbiased"; (6) that the police violated his Fourth Amendment rights by conducting surveillance and seizing his car without a warrant; (7) that he was "denied due process in the beginning stages of trial as well as zealous representation"; and (8) that he was denied his right to testify in the grand jury. <u>See</u> Pet. at 4-7 (Dkt. No. 1).  Respondent filed an answer and supporting memorandum in opposition to the petition.  Dkt. No. 9.

### III. The Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ."  28

U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

## IV.  The AEDPA Standard of Review

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

## V.  Analysis of the Petition

## 1.  Trial Court Error (Ground One)

Petitioner argues, as he did in his counseled appellate brief, that the trial court erred in precluding Petitioner from presenting the complete written statement that co-defendant Owens gave to police, in which he indicated, among other things, that he shot his

weapon in the direction of the vehicle when he observed it almost hit West. Petitioner asserts that "[t]his is in violation of [his] 14th amendment right of due process." Pet. at p 4. The Appellate Division rejected this claim on the merits.[3] See Rouse, 74 A.D.3d at 1817. As discussed below, this claim is meritless.

"As an initial matter, it is well established that the mere fact that a state court made evidentiary errors, without more, does not provide a basis for habeas relief." Crispino v. Allard, 378 F. Supp. 2d 393, 409 (citing Estelle v. McGuire, 502 U.S. 62, 72 (1991); Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)). Evidentiary rulings erroneously made by a state trial court amount to constitutional error only if such rulings have the effect of depriving the defendant of a fundamentally fair trial. Chambers v. Mississippi, 410 U.S. 284, 302-03 (1973); accord Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988) ("It is true that erroneous evidentiary rulings do not automatically rise to the level of constitutional error. The court's duty on a petition for habeas corpus is to determine whether the excluded [evidence] was material to the presentation of the defense so as to deprive the

---

    [3]

    The Appellate Division found that, "[c]ounty [c]ourt properly refused to admit in evidence that part of a statement made by [Owens] to police investigators in which he indicated that he shot his weapon in the direction of the victim's vehicle when he observed the vehicle almost hit [West]. Contrary to defendant's contention, that part of the codefendant's statement is not admissible as a declaration against penal interest because it was not disserving to the [codefendant]." Rouse, 74 A.D.3d at 1817 (quotations and citations omitted).

defendant of fundamental fairness. The court must determine whether the exclusion was an error of constitutional dimension, and whether that constitutional error was harmless . . . ."). In this case, Petitioner has not demonstrated that there an error of state evidentiary law, much less an error of federal constitutional magnitude.

Under the law of New York State, in order for a hearsay statement to qualify for admission into evidence as a declaration against the maker's penal interest, the following elements must be present: the declarant must be unavailable as a witness at trial; when the statement was made the declarant must be aware that it was adverse to his penal interest; the declarant must have competent knowledge of the facts underlying the statement; and, supporting circumstances independent of the statement itself must be present to attest to its trustworthiness and reliability. People v. Settles, 46 N.Y.2d 154, 167 (1978). Moreover, even if the court decides to allow such evidence, it should admit only the portion of that statement which is opposed to the declarant's interest since the guarantee of reliability contained in declarations against penal interest exists only to the extent the statement is disserving to the declarant. Id., 70 N.Y.2d at 16.

Here, the trial court properly excluded the portion of Owens's statement that he shot his weapon in the direction of the victim's vehicle when he observed the vehicle almost hit West because it was

exculpatory –- insofar as it provided a justification/alternate explanation for the shooting -- and therefore not a declaration against his penal interest. The record reflects that defense counsel informed the court that he had subpoenaed co-defendant Owens to testify for the defense. T.T. 749. The following day, counsel for Owens informed the court that Owens would assert his Fifth Amendment right against self-incrimination if he were called to testify. T.2,[4] 2. Asserting Owens's unavailability, defense counsel asked for permission to introduce into evidence Ownens's two-page written statement to the police as a declaration against penal interest. T.2, 2-3. In this written statement, Owens admitted, among other things, to having been in the Magnolia Street area at the time of the crime with his co-defendants looking for someone to rob. T.2, 2, 7. Also in this statement, he indicated that, "[w]hen [he] saw [the victim's] car almost hit [West], [he] pulled the shotgun [he] was carrying and [he] fired one round into the air toward the front end of the car." T.2, 6.

The People conceded that there were numerous assertions within Ownens's entire statement that were against his penal interest and therefore admissible. T.2, 25-26. The prosecutor, however, opposed the introduction of the statement that Owens did not fire his weapon until the victim's vehicle almost struck West. T.2, 6. The trial court found that Owens's inculpatory statements were

_____
[4]
"T.2" refers to the trial transcript beginning on September 22, 2006.

admissible, including that the men were driving around to find a target to rob, they were armed, and that Owens fired a shot. The court found that the portion of Ownens's statement, "[w]hen I saw the car almost hit [West]" was inadmissible because it was exculpatory and therefore not a declaration against Owens's penal interest. T.2, 33-34.

The trial court's decision, as affirmed by the Appellate Division, fell squarely within New York evidentiary law regarding declarations against penal interest. In any event, even if the trial court erred in excluding the particular statement in question (a finding this Court does not make), said error did not deprive Petitioner of a fundamentally fair trial. This is so because the evidence against Petitioner was overwhelming, and the assertion that the fatal shot was fired in retaliation for Scriven's vehicle almost striking West was contradicted by Petitioner's own statements in which he admitted to the facts and circumstances surrounding the crime and that he, Owens, Peters, and West ventured out on the evening of March 9, 2006, armed, with the intent to commit a robbery.

Accordingly, the state court's adjudication of this claim did not contravene or unreasonably apply clearly established Supreme Court law. The claim is therefore denied.

**2.   Legal Sufficiency and Weight of the Evidence (Ground Two)**

Petitioner argues, as he did on direct appeal, that the evidence presented at trial was legally insufficient to support his conviction of felony murder.  Petitioner also claims, in the alternative, that the verdict was against the weight of the evidence.  See Pet. at p 4.  The Appellate Division rejected these claims on the merits.  Rouse, 74 A.D.3d at 1818.  For the reasons set forth below, the instant claims do not warrant habeas relief.

**(A)  Legal Sufficiency**

Petitioner claims that the evidence was legally insufficient to support his conviction for felony murder insofar as "[t]he evidence failed to prove that [he] and his co-defendants were committing an attempted robbery at the time of the killing.  The evidence also fails to prove that the killing occurred in furtherance of an attempted robbery."  Pet. at 4.  This claim is meritless.

A legal sufficiency claim is based on federal due process principles, see Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (Fourteenth Amendment requires record evidence to reasonably support a finding of guilt beyond a reasonable doubt), and therefore is amenable to habeas review.  Under the clearly established law set forth in Jackson, a habeas petitioner "bears a very heavy burden" when challenging the legal sufficiency of his state criminal conviction.  Quirama v. Michele, 983 F.2d 12, 14

(2d Cir. 1993). The habeas court is required to consider the trial evidence in the light most favorable to the prosecution and must uphold the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319 (emphasis in original). <u>Jackson</u> "unambiguously instructs that a reviewing court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Cavazos v. Smith</u>, ___ U.S. ___ , 132 S. Ct. 2, 6, 181 L. Ed. 2d 311 (2011) (quotation omitted). A legal insufficiency claim therefore does not permit the reviewing court to redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact. <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983); <u>see also</u> <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues."). Applying these principles, it is clear that Petitioner is not entitled to habeas relief.

New York's felony-murder statute provides, in pertinent part, that "[a] person is guilty of murder in the second degree when . . . acting either alone or with one or more other persons, he commits

or attempts to commit robbery . . . , and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants. . . ."  Penal Law § 125.25[3].

In this case, Petitioner admitted in his statement to police that he, Owens, West, and Peters planned to commit a robbery. Petitioner admitted further that he organized this operation by making phone calls to the other men, picking each of the men up in his car, and driving them around looking for victims to "juke", or rob.  T.T. 539, 601.  Petitioner also admitted that he gave Peters his pellet gun to use during the robbery.  T.T. 540.  And, Petitioner admitted that West carried a silver handgun and Owens carried a "sawed-off" shotgun on the night of the crime.  T.T. 539, 540, 601.  Further, the occupants of the victim's vehicle testified that the three men who attacked them surrounded the vehicle, displayed weapons, and wore face masks and dark clothing. Robinson, Ashley Snead's next door neighbor, testified that shortly before 11:00 p.m. on the night of the crime, he heard voices outside and then heard shots.  He testified that he looked out the window and saw three men flee the scene of the crime and get into a Ford Taurus parked down Magnolia Street.  Robinson testified that he observed this vehicle drive away with the headlights off. T.T. 461, 463.  In short, the evidence overwhelmingly established that Petitioner organized the March 9, 2006 outing with the intent

of committing a robbery, that he aided that goal by picking up Owens, West, and Peters, driving them around, providing Peters with a pellet gun, and then driving the three men away from the scene of the crime after the fatal shooting of Scrivens. This constitutes sufficient evidence upon which a rational fact finder could find that the prosecution established, beyond a reasonable doubt, that Petitioner was guilty of felony murder.

Accordingly, the state court's adjudication of this claim did not contravene or unreasonably apply clearly established Supreme Court law. Petitioner's sufficiency of the evidence claim is meritless and is therefore denied.

**(B)  Weight of the Evidence**

Petitioner argues, in the alternative, that the verdict was against the weight of the evidence. <u>See</u> Pet. at p 4. A weight of the evidence claim is "an error of state law, for which habeas review is not available." <u>Douglas v. Portuondo</u>, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002); <u>Correa v. Duncan</u>, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5)"); <u>see also</u> <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence . . . are for the jury and not grounds for reversal on appeal. . . .") (citations omitted). Thus, Petitioner's weight of the evidence

claim is denied for failure to state a cognizable constitutional question.

In sum, Petitioner's legal sufficiency and weight of the evidence claims do not warrant habeas relief, and are therefore denied.

### 3. Harsh and Excessive Sentence (Ground Three)

Petitioner argues that his sentence is "unduly harsh or severe" because "[he] did not directly participate in the murder of the victim." See Pet. at p 4-5. Further, he asserts that "[t]his violates [his] 14th amendment right of due process as well as his 8th amendment right of no cruel or unusual punishments being inflicted on a defendant." Id. at p 5. For the reasons discussed below, this claim does not warrant habeas relief.

### (A) "Unduly Harsh or Severe" Sentence

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). When Petitioner raised this claim on direct appeal, he urged the Appellate Division, Fourth Department to exercise its discretionary authority under State law to reduce his sentence in the interest of justice. See Resp't Ex. A at p 36-41. Petitioner's sentencing claim, based solely on state law, is not appropriate for federal habeas review.

The Second Circuit has held that no federal constitutional issue amenable to habeas review is presented where, as here, the sentence is within the range prescribed by state law. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); Fielding v. LeFevre, 548 F.2d 1102, 1108 (2d Cir. 1977); Underwood v. Kelly, 692 F. Supp. 146 (E.D.N.Y. 1988), aff'd, 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 837 (1989). In this case, Petitioner was convicted of second-degree (felony) murder in violation of Penal Law § 125.25[3] (a Class A-I felony), and was sentenced to an indeterminate term of twenty-two years to life imprisonment. This sentence falls with the statutory range under New York law. See Penal Law §§ 70.00[2][a], [3][a][I] (for a Class "A" felony the maximum sentence is life imprisonment; the minimum sentence must be at least fifteen years and may not exceed twenty-five years). Because Petitioner's sentence falls within the range established by state law, his claim does not present a federal constitutional issue cognizable on habeas review. Accord, e.g., Peppard v. Fischer, 739 F. Supp.2d 303, 309 (W.D.N.Y. 2010) (collecting cases).

**B.   Eighth Amendment Violation**

To the extent Petitioner raises an Eighth Amendment claim in the instant petition on the basis that his sentence constitutes cruel and unusual punishment, the Court finds said claim unexhausted because the constitutional nature of the claim was not

fairly presented to the state courts on direct appeal. When Petitioner raised this claim on direct appeal, he invoked the appellate court's discretionary authority to reduce the sentence in the interest of justice, pursuant to C.P.L. §§ 470.15(6)(b), 470.20(6). See Resp't Ex. A at p 36-41. Courts in this district have found that a prisoner's reliance on a state procedural law granting courts discretionary authority to reduce sentences does not "fairly present" his or her constitutional claim in state court. Accord, Bester v. Conway, 778 F. Supp. 2d 339, 2011 U.S. Dist. LEXIS 43141, 2011 WL 1518696, at *8 (W.D.N.Y. 2011) (citing King v. Cunningham, 442 F. Supp.2d 171, 181 (S.D.N.Y. 2006) (citations omitted)). Because Petitioner could return to state court and file a motion pursuant to C.P.L. § 440.20 to set aside his sentence on the ground that it is unconstitutional, his Eighth Amendment claim remains unexhausted.

Petitioner's failure to exhaust the Eighth Amendment claim, however, is not fatal to this Court's disposition of his application on the merits. Because the Court finds the claim to be wholly meritless, it has the discretion to dismiss the petition notwithstanding Petitioner's failure to exhaust, and does so. See 28 U.S.C. § 2254(b)(2); Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002).

The Supreme Court has articulated a principle of "gross disproportionality" for measuring whether a prisoner's sentence

violates the Eighth Amendment proscription against "cruel and unusual punishment." E.g., Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983); Rummel v. Estelle, 445 U.S. 263 (1980). Only extreme sentences that are grossly disproportionate to the crimes for which they are imposed can be said to violate the Eighth Amendment. See id.; see also United States v. Snype, 441 F.3d 119, 152 (2d Cir. 2006) (noting that successful challenges to the proportionality of particular sentences have been exceedingly rare). Applying the Supreme Court's precedent on this issue, the Court finds that this case does not present one of those rare and extreme circumstances in which the Supreme Court contemplated intervention by a reviewing court into a state's sentencing decision.

Accordingly, Petitioner's sentencing claim provides no basis for habeas relief and the claim is therefore denied.

## 4. Petitioner's Remaining Claims (Grounds Four-Eight) are Unexhausted but Deemed Exhausted and Procedurally Defaulted from Habeas Review

Petitioner's remaining claims –– that two jurors should have been excluded from the jury panel, that his Fourth Amendment rights were violated when the police illegally placed him under surveillance and searched his car, that he was denied the effective assistance of pre-trial counsel and that his right to a speedy trial was violated, and that he was denied his right to testify before the grand jury –– are unexhausted because they are raised

for the first time in the habeas petition.  Because, however, Petitioner faces an absence of state corrective procedures if he were to return to state court to exhaust these record-based claims, the Court deems them exhausted but procedurally defaulted from habeas review.

As set forth above, courts may not grant a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies.  See 28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275 (1971);  Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997).  Petitioner failed to do so here with respect to his remaining claims.  Petitioner did not raise these claims on direct appeal, nor did he do so in a post-conviction motion.  Although Petitioner raised these claims in his coram nobis application, he did so only in support of his ineffective assistance of appellate counsel claim.  Consequently, these claims remain unexhausted.  See Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001) (holding that presenting claims in a coram nobis petition as predicates for an ineffective assistance of counsel claim did not exhaust those predicate claims because the Appellate Division did not decide them on the merits); see also Black v. Herbert, No. 02 CV 6252, 2009 U.S. Dist. LEXIS 35047, 2009 WL 1097971, at *8 (S.D.N.Y. April 23, 2009) (finding that petitioner's challenge of trial counsel's performance in his coram nobis petition was only in the context of arguing ineffective assistance of appellate counsel and not in the

form of an independent claim, and that petitioner therefore had not "fairly presented" that claim to the Appellate Division).

"Where, however, a petitioner presents an unexhausted claim, that claim should nonetheless be deemed exhausted if the petitioner no longer has an available remedy in state court." Black, 2009 U.S. Dist. LEXIS 35047, 2009 WL 1097971, at *8-9. Petitioner was entitled to one direct appeal to New York's Appellate Division and one request for leave to appeal to the New York Court of Appeals, both of which he pursued. See Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001). Because these claims are record-based, "New York does not otherwise permit collateral attacks [in the form of a 440.10 motion to vacate judgment] on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." See id.; C.P.L. § 440.10(2)(c). Therefore, it is now too late for Petitioner to exhaust these claims, rendering them procedurally barred from habeas review. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Aparicio, 269 F.3d at 90; Black, 2009 U.S. Dist. LEXIS 35047, 2009 WL 1097971, at *9.

Petitioner can obtain federal habeas review of his procedurally defaulted claims only if he demonstrates either (1) cause for the default and actual prejudice; or (2) that this Court's failure to consider his claims would result in a fundamental miscarriage of justice because he is actually innocent. Murray v. Carrier, 477 U.S. 478, 496 (1986). Although permitted

to, Petitioner did not submit a traverse to Respondent's answer, and has not attempted to counter Respondent's procedural default argument. On this record, the Court finds that Petitioner is unable to make the required showing of cause and prejudice. Although Petitioner contends at ground two of the petition (see discussion *supra*) that the trial evidence failed to establish that he committed second-degree felony murder, that is insufficient to meet the "actual innocence" standard. See <u>Doe v. Menefee</u>, 391 F.3d 147, 162 (2d Cir. 2004) ("As <u>Schlup [v. Delo</u>, 513 U.S. 298 (1995)], makes clear, the issue before such a court is not legal innocence but factual innocence."). Thus, the instant claims remain subject to an unexcused procedural default and are denied on this basis.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      May 31, 2013
            Rochester, New York